Sylvester J. VAUGHNS, Jr.,
et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.,
Defendants.**

**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.,
Defendants.**

Civil Nos. PJM 72–325, PJM 81–2597.

United States District Court,
D. Maryland.

Oct. 6, 1997.

Patricia A. Brannan, Hogan & Hartson, Washington, DC, Daniel Kohrman, Pace McConkie, Washington, DC, for Plaintiffs.

Andrew W. Nussbaum, Roger Thomas, Reichelt, Nussbaum, Brown, Dukes & LaPlaca, Greenbelt, MD, Sean D. Wallace, Deputy County Attorney, Upper Marlboro, MD, Carmen Shephard, Joanne Gedert, Office of the Attorney General, Baltimore, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

On August 8, 1997, the Board of Education of Prince George's County filed a Motion Requesting Leave to Modify the Magnet Admission Guidelines for the 1997–98 school year, just as it did for the 1996–97 school year when the Court permitted modification. Without in the least specifying what they consisted of, the Board referred to "additional recruitment efforts undertaken ... to attract non-African American students to magnet schools" and the fact that such attempts were "without Success". This bare assertion came despite the documentation, discovery, hearing, and court opinion that attended the Board's request of last year that the Guidelines be modified. Although a telephone conference was held within a week of this year's filing, given the lateness of the request plus Plaintiffs' express objection pending further review plus the immediate unavailability of counsel and the Court, the Court denied the request. The Court, however, expressly left the matter open to be reconsidered after Labor Day.

On September 4, the Court received a supplemental memorandum from the Board in support of its motion, setting out in greater detail the magnet recruitment efforts that the Board has pursued since the Fall of 1996. The Board's submission included affidavits from the Director of Magnet Schools for the County and the Director of Pupil Accounting and School Boundaries. In recent days, Plaintiffs have had the opportunity to engage in discovery regarding the Board's most recent filing, including taking the deposition of the Director of Magnet Schools.

Plaintiffs and Defendant–Intervenor Prince George's County now concur in the Board's request that the Guidelines be waived for the 1997–98 school year to allow additional African–American students to attend certain identified schools.

On this more complete record, the Court has determined to modify the Guidelines for the 1997–98 school year and permit 347 qualified African–American students to fill slots designated for non-African-American students. Further comment is in order.

### II.

The background of the Prince George's County magnet school program was discussed in the Court's Opinion pertaining to modification of the Guidelines for the last school year and needs no further elaboration at this time. See Vaughns v. Board of Education of Prince George's County, et al., 941 F.Supp. 579 (D.Md.1996).

The recent developments are these:

Some enhanced efforts of recruitment have occurred since last year.

To begin, a Magnet Recruitment Plan (the Plan) was discussed and approved by the Community Advisory Council on Magnet and Compensatory programs (C.A.C.). Although never formally adopted by the Board, the Plan was apparently reviewed by it at least informally and was in fact implemented at

least in part during the 1996–97 school year.[1] Through the affidavit of its Director of Magnet Schools, Susan B. Miller, the Board contends that the following strategies contained in Section III of the Plan were implemented during the 1996–97 school year:

- For the first time since the 1990–91 school year, the school system mailed magnet brochures to every household in Prince George's County.
- The school system increased television time on its cable channel relating to magnet program descriptions, registration procedures, and dates for open house visitations. The school system is currently working on establishing a Web site on the Internet for magnet programs.
- Education Fairs were held in the fall of 1996 and included at those fairs were descriptions of magnet school programs.
- Magnet flyers and other information about magnet schools will be provided to parents as part of upcoming back-to-school night activities.
- Magnet flyers, brochures, videotapes, and announcements of magnet open house visitation dates were provided to daycare centers, realtors offices, libraries, recreation centers, municipal government offices, chambers of commerce, businesses, and various corporations within the county. Although such information had been distributed in the past, the school system increased the distribution during the 1996–97 school year to include, for the first time, all day care centers, realtors offices and recreation centers.
- For the first time in several years, new posters for magnet school programs were distributed throughout the county.
- For the first time, information was provided to parents about obtaining videotapes describing the Magnet School Programs, and a "lending library" was established for the purpose of lending those materials to parents.
- Efforts to contact the media regarding public service announcements for magnet registration, open house dates, and education fairs were greatly expanded during the 1996–97 school year.
- Recruitment letters have been sent to families of students who reside in catchment areas for magnet schools in which enrollment of non-African-American students is most needed. Parents who are on waiting lists for other Magnet Schools have been contacted advising them of existing vacancies in schools, even if not in their catchment area.
- Magnet School display centers have been provided to schools for display in the OASIS Centers within the school system.[2]
- A Magnet Recruitment Advisory Subcommittee was established as a part of the C.A.C., which has a meeting on a regular basis.

On the other hand, Plaintiffs point out that the Board's recruitment efforts are not all that they might have been. For example, although a line item in the County budget for the Magnet School's Office for Magnet Recruiting is new, most of the money included in that item was spent through other accounts in previous years. In other words, the magnet recruitment budget does not constitute new spending, but simply the consolidation of money from different accounts into a single line item with the Magnet Schools Office.

Additionally, although $70,000 to $80,000 was added in fiscal year 1997 to fund the evaluation of magnet recruitment efforts, none of that money has in fact been used.

Further, although the Magnet Recruitment Plan includes 11 specific strategies focusing primarily on promoting magnet school programs to the community at large, only four of these were new. One of these, the establishment of an Internet Web site inserting information about magnet schools, has yet to be completed. Another undertaking, to translate magnet materials into Spanish, has apparently been abandoned. The Board has, however, gone forward with inserting

---

1. The full text of the Plan is set out as Appendix A to this Opinion.

2. OASIS Centers are community schools hosting such activities as computer training and tutoring for County residents. They exist in each of the 20 school clusters within the County.

information about magnet schools in back-to-school materials for parents and in providing information to parents about obtaining video tapes describing the magnet programs.

Plaintiffs also suggest that targeted strategies for recruiting students into specific magnet programs have been less than fully implemented. Here, too, using the Internet to provide information about specific program vacancies has not yet been accomplished. Similarly, the implementation of the proposed automated telephone system for answering parents' questions apparently has yet to be completed.

Finally, in order to promote program effectiveness and quality, the Recruitment Plan proposes a system of evaluation consisting largely of interviews with students and their families to learn what they think about the magnet schools. Information from these evaluations would be used to refine the magnet school curriculum. But the evaluative process called for by the Plan has yet to get underway.

Despite the fact that the evaluative process has not yet begun, the Director of Magnet Schools states that, in her opinion, program enhancements, staff development and increased recruiting will have no effect on the population of non-African-American students at most of the 10 schools having vacancies for non-African-American students at this time. In the Director's opinion, only Math, Science and Technology schools—which comprise four of the ten schools with vacancies—could attract a greater number of non-African-American students through program enhancements. Vacancies at other schools, she says, are the result of demographic changes in the attendance areas for those schools and would not be affected.

The Board points out that its proposed Guideline modification for 1997–98 would affect only 5 elementary schools, 4 middle schools, and 1 high school. The projected largest increase in African–American population would be 1.8% at the Owings Road Elementary School. For the other schools, the projected change in African–American population would be from .1% to 1.4%.

Otherwise the Board claims success for its recruitment efforts over the last year. It points out, among other things, that in 1996, there were six Talented and Gifted (TAG) magnet elementary schools with unfilled vacancies for non-African-American students, whereas only 2 of those had vacancies this year. Even those schools, according to the Board, had fewer vacancies this year than last, Longfields reducing to 26 openings from 74 one year ago and Valley View to 59 openings from 80 a year ago. Shady Side, a French immersion magnet, has 22 openings this year compared to 40 last year. Walker Middle School has 18 openings this year as compared to 42 last year. Drew–Freeman Middle School decreased from 93 openings to 81 this year and Nicholas Orem Middle School went from 41 to 20. The Board stands by its view that there are a small number of schools within the school system which simply do not seem to attract a sufficient number of non-African-American students to fill all the vacancies in those schools.

### III.

Plaintiffs contend and the Court agrees that the Board has once again failed to allow the Court or Plaintiffs adequate time to conduct a timely review of its request. We are told by the Board that it could not have acted sooner because it is often not known until the summer prior to a school year what enrollment at magnet schools will be like for the ensuing school year. That begs the question. The Board has known throughout the year what recruitment activities it was undertaking. The Board could and should have made a full report of its recruitment activities available to Plaintiffs and the Court well before the close of the 1996–97 school year. It is not, as the Board would have it, for the Plaintiffs to make relevant inquiries into the Board's recruitment activities through the year, much less for the Court to have to do so.

That said, for this school year the Court concludes that there would be no harm in permitting 347 African–American students to fill the vacancies otherwise reserved for non-African-American students by the admissions Guidelines.

The Court expressly defers any finding as to whether the Board could or should have been more diligent in carrying out its recruitment efforts this year. The Court acknowledges that there are cost factors to be considered in the implementation of recruitment initiatives and that some type of cost-benefit analysis is appropriate in determining which efforts to undertake and which to defer. Then, too, it is debatable whether increased recruitment efforts would produce an increased number of non-African-American students applying for enrollment in the schools on the list. Finally, magnet recruitment is very much a topic to be covered in the overall trial of this matter to commence in November and will be explored in detail at that time. For the present purposes, it suffices to conclude that the Board has provided some enhanced recruitment efforts over the past school year which to some extent have been successful.

A few final observations would seem timely in view of the Court's upcoming decision about its continuing involvement in the Prince George's County school system.

### IV.

The parties and the public should be very clear what this latest pleading—indeed what this entire lawsuit—is and is not about. It is not about granting or denying worthy African–American students access to the County's magnet school program. It is not about whether magnet schools are an appropriate educational tool nor is it about the general effectiveness of the Prince George's County Public Schools.

From the beginning, the involvement of the federal court in the County's school system has been for a specific and limited purpose: to assure that all vestiges of prior segregation of the races in the public schools have been eliminated.

The magnet school concept came into existence precisely as a result of that concern. The basic idea of the magnet is that, by offering specialized, high quality programs to students on a county-wide basis, school children of diverse races will be attracted to attend; in other words, desegregation will result. But, as crafted by the parties themselves and as endorsed by Judge Frank A. Kaufman, the Court's predecessor in these proceedings, the matter has not been left entirely to chance. Guidelines aiming at racial balance have had to be adopted because, in their absence, applications could well be skewed in favor of one race or another and the concept of the magnet would be defeated.

A purely color-blind magnet system—where each child is evaluated purely on the basis of his or her individual merit—might well be a desideratum of any school system and a highly effective educational format. Such, however, is not the proper concern of a federal court whose involvement in local school affairs is justifiable only insofar as it must see to the elimination of the vestiges of prior segregation.

There is another important consideration to bear in mind.

Insofar as this federal court case is concerned, magnet schools presuppose a bona fide effort on the part of the School Board to seek out and recruit qualified candidates of different races. This was true when there was an insufficient number of African–American students in the Talented and Gifted Programs before the magnets came into being. It is no less true today when the apparent shortage is of qualified non-African-American applicants. The Court made this very clear in its Opinion and Order granting modification of the Guidelines for the last school year, particularly in view of the fact that the Board had cut back on earlier County-wide mailings and education fairs, among other efforts.

What cannot and will not suffice, so long as the Court is involved, is the mere assertion that the Board has undertaken "recruitment efforts" as to non-African-American that have been "without success". In the context of this proceeding, a far more extensive showing is required.

It is critical that all parties to this suit, as well as the public, understand who has what responsibility in terms of the Prince George's County school system. There are now and certainly will be in the future many decisions entirely within the province of the Board—or indeed within the province of the Prince George's County Council, the citizens of

Prince George's County or the Legislature of the State of Maryland. These will be made wholly without regard to what this Court may say or do. To the extent it is present at all, the Court's focus in this matter remains limited, albeit critically important. So long as its Orders are in effect, tailored as they are in an effort to accomplish certain defined ends, they must be pursued in utmost good faith. Whether the Court determines that it is no longer necessary to continue its involvement in the Prince George's County school system—and that is certainly a possible conclusion to be reached—is a matter the Court will consider over the coming weeks and months.

An appropriate Order will be entered.

## Appendix A

## Magnet Recruitment Plan

### I. *Introduction*

During the 1985–86 school year, the Prince George's County Public Schools began implementation of magnet schools as one component of the school system's desegregation effort. In subsequent years, additional magnet schools were established. The school system currently has 16 different magnet programs in 53 schools, from elementary through high school levels.

Since magnet programs began operating in the school system, a variety of recruitment strategies have been employed to encourage enrollment in these programs. (See Attachment A.) However, at the end of the 1995–96 school year, it was determined that there were over 500 vacant seats in magnet programs. In response to these vacancies, the Board of Education passed Resolution 386–96 which called for filling empty magnet seats with African American students who were on waiting lists for those programs. The Resolution called for this action irrespective of the racial composition of the student body currently enrolled in the programs. It also directed the Superintendent to brief the Board on measures to be taken to improve magnet recruitment.

An additional factor effecting magnet recruitment was the opinion of the Community Advisory Council that the school system had not done all that it possibly could to recruit students for magnet programs. Judge Peter J. Messitte, United States District Court, also voiced that opinion and requested submission of a school system plan to improve magnet recruitment.

The Magnet Recruitment Plan which is presented below has been designed to address the need for a more assertive recruitment effort. Additional strategies may be included in the plan, as appropriate.

### II. *Purpose and Goals for Recruitment Initiative*

The purpose of the Magnet Recruitment Plan is to increase the number of students who apply for enrollment in the magnet programs of Prince George's County Public Schools, with special emphasis on the recruitment of non-African American students to fill vacancies in specific magnet programs. The recruitment plan emphasizes improving communication with the public about the programs, as well as enhancing the quality of the magnet programs. The plan is built upon four goals:

- Increase the number of families and other individuals within Prince George's County who receive information about magnet programs.
- Develop recruitment strategies that are especially tailored to reach students who may be interested in specific types of magnet programs.
- Target recruitment efforts for families in magnet school catchment areas in which enrollment of non-African American students is most needed for desegregation purposes.
- Complete evaluation procedures for magnet programs and improve, update or refine program components, as needed.

### III. *Strategies to Reach Goals of Magnet Program Recruitment Effort*

The strategies described below are designed to address the purpose and goals of the Magnet Recruitment Initiative. The strategies are organized into three groups.

**A. Strategies That Focus Primarily on Promoting Magnet Programs to the Community**

1. Mail magnet brochures to all households in Prince George's County.

2. Establish an Internet "Web Site" for Magnet Programs of Prince George's County Public Schools.

3. Increase the television time on Cable Channel 12 that relates to magnet program descriptions, registration procedures and dates for Open House visitations.

4. Schedule Education Fairs for families during the Fall semester. Include components that describe both elementary and secondary programs.

5. Include magnet fliers and other information about magnet schools in back-to-school materials provided for parents. Additionally, include this information as part of "back-to-school" night activities.

6. Announce dates for Magnet Open Houses and Education Fairs at the beginning of each new school year to ensure that parents have ample time to plan to attend these events. Should families be unable to attend Open House activities on the scheduled dates, develop procedures for parents to follow to make school visits prior to the magnet application deadline, as well as procedures for them to obtain responses to their questions.

7. Distribute magnet fliers, brochures, videotapes, and announcements of magnet open house visitation dates to locations such as the following:

   - Day Care Centers Note: Invite parents/guardians of students in day care centers to attend the Education Fairs. (See # 4 above.)
   - Realtors' offices
   - Libraries
   - Recreation centers
   - Municipal government offices
   - Chambers of Commerce (for distribution to businesses)
   - Corporations within the county

8. Develop posters for distribution throughout the County that advertise the magnet programs.

9. Provide information to parents about obtaining video tapes that describe the magnet programs.

10. Contact the media to request public service announcements for magnet registration, open house dates and Education Fairs. Include municipal weekly publications in this contact. Provide thirty to sixty second PSA's that promote magnet programs. Describe positive features of magnet programs, include student comments, and present "success stories" from various programs.

11. Translate magnet program information into Spanish and distribute this information in collaboration with the school system's ESOL and ISGO offices, as well as appropriate community and government offices.

**B. Strategies That Focus Primarily on Student Recruitment for Specific Magnet Programs**

1. Develop and/or update individual magnet program fliers.

2. Develop videos describing individual magnet programs for broadcast on Cable Channel 12 and use by magnet coordinators and guidance counselors.

3. Ensure that parents/guardians of attendance area students are made aware of the opportunity to enroll their children in the magnet program at their assigned school.

4. Establish an automated message system that can provide recorded information for parents/guardians and students about specific magnet programs and registration information.

5. Continue to have counselors, magnet coordinators and school staff visit feeder schools to recruit students for magnet programs.

6. Provide timely information to parents/guardians regarding any changes in program availability and/or their children's magnet continuity options. As appropriate, send magnet program and informational material to parents/guardians throughout the school year.

7. Send recruitment letters to families of students who reside in catchment areas for magnet schools in which enrollment of non-African American students is most needed.

8. Send letters to families of non-African American students on the waiting list, advising them of programs in which vacancies exist.

9. Include information about specific magnet program vacancies through the Internet and Cable Channel 12 broadcasts.

10. Provide staff development programs for principals, magnet coordinators and guidance counselors on current information and changes in magnet programs and procedures.

11. Provide a magnet school display center in every OASIS Center within the school system.

## C. Strategies That Focus on Magnet Program Content and Quality

1. Survey/interview students and families regarding either their interest *in* specific magnet programs or their level of satisfaction *with* magnet programs. This procedure would involve families of students and students currently enrolled in magnet programs, families of students and students who are potential candidates for magnet programs, and families of students and students who leave magnet programs after middle school.

2. Use data from surveys/interviews (see # 1 above) in the development and implementation of marketing strategies for specific magnet programs. These sane data can be used in modifying and evaluating magnet programs.

3. Complete evaluation procedures for individual magnet programs

4. Refine/update curriculum and various program components, based upon results of review and evaluation procedures.

5. Increase staff development offerings for magnet program staff.

6. Ensure that procedures are in place to address specific problems related to magnet programs.

IV. *Evaluation of Recruitment Effort Effectiveness*

Because it is important to assess the effectiveness of magnet recruitment efforts in order to make appropriate adjustments or additions to those efforts, the following steps will be taken:

A. Establish a Magnet Recruitment Advisory Committee that includes educators, parents and other citizens. This committee will be a subcommittee of the Community Advisory Council.

B. Collaborate with the Department of Research, Evaluation and Accountability to design an evaluation plan for use in assessing the effectiveness of magnet recruitment activities.

## ORDER

Upon consideration of the Motion of Defendant Board of Education of Prince George's County for Leave to Modify Its Magnet Admission Guidelines for 1997–98 and the other parties' responses thereto, it is for the reasons set forth in the accompanying Opinion this 6th day of October, 1997

ORDERED that the Motion of the Board of Education is hereby GRANTED; and it is further

ORDERED that the exception to the Guidelines granted the Board is limited to 347 students identified on Exhibit 2 to the William J. Chapell affidavit; and it is further

ORDERED that any further exceptions to the Guidelines must be brought to the attention of Plaintiffs and the Court in sufficient time to allow reasonable consideration of the requested exceptions; and it is further

ORDERED that the Board shall provide a monthly report to the Court and Plaintiffs of any proposed student admissions outside the Guidelines in addition to the 347 students identified herein; and it is further

ORDERED that the Board shall take immediate affirmative action to contact the parents of non-African-American students who remain on the waiting list for magnet programs because they could not placed in specific programs for which they applied and shall encourage those students to apply for and seek enrollment in alternative magnet programs for which they might be eligible for admission; and it is further

ORDERED that the Board shall undertake an evaluation of the recruiting activities called for in the Magnet Recruitment Plan and provide a report to the parties and the Court by no later than April 30, 1998.